IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BELLINGHAUSEN,<br><br>              Plaintiff,<br><br>     v.<br><br>TRACTOR SUPPLY COMPANY, and DOES 1-50,<br><br>              Defendants. | Case No.: C-13-02377 JSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

In this employment wage-and-hour case, Plaintiff Patrick Bellinghausen brings claims on behalf of himself and a proposed class of Defendant Tractor Supply Company employees related to Defendant's meal and rest break policies. Now pending before the Court is Defendant's motion to dismiss Plaintiff's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 47.) After carefully considering the parties' submissions, the Court concludes that oral argument is unnecessary, VACATES the February 6, 2014 hearing, and DENIES the motion to dismiss.

//

//

# ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

Plaintiff, a California citizen, worked for Defendant, a Delaware corporation, in an hourly position as retail-store clerk from approximately April 2010 to January 2013. (Dkt. No. 46 ¶ 2.) Plaintiff claims several violations of California's wage-and-hour laws. Because nearly all of Plaintiff's factual allegations are contained within each cause of action, the Court will categorize Plaintiff's allegations under those claims.

**First Cause of Action: Failure to Provide Meal Periods (California Labor Code §§ 204, 223, 226.7, 512, and 1198)**. Plaintiff alleges that Defendant's meal break policy states:

> It is the policy and practice of Tractor Supply Company to comply with all state and federal wage and hour laws that govern the mandated breaks for Team Members. Team Members are expected to take the entire rest and meal period each day as outlined in the Meal and Rest Period Policy for their work location. Tractor Supply Company policy does not permit Team Members to voluntarily forfeit meal or rest breaks.

(*Id.* at ¶ 28.) Plaintiff contends this policy

> violates California law because the policy does not provide for meal breaks to be uninterrupted for at least thirty minutes when the employee works five hours or more. It does not state that the first meal break must be taken before the fifth hour of work, and it does not state and/or provide for a second meal break if the employee works 10 or more hours, nor does it provide that the second meal break must be taken before working the 10th hour.

(*Id.* at ¶ 30.) Further, "Plaintiff alleges that no other external policies were provided at their work location to him and the class concerning meal breaks." (*Id.* at ¶ 29.) There were also "no other oral or written communications at their work location from Tractor Supply Company other than the handbook as delineated and cited to in ¶ 27 [sic] supra attempting to explain the their [sic] meal break rights." (*Id.* at ¶ 31.) "[T]here were no posters advising employees of their meal break rights in their Tractor Supply Company's store location." (*Id.* at ¶ 33.)

Defendant "has a policy and practice of impedeing [sic][,] discouraging, and dissuading Plaintiff and Meal Break Class members from taking meal periods by regularly [sic]." (*Id.* at ¶ 26.) Defendant also "regularly understaffed its stores so even if Plaintiff and the putative class members wanted to take a meal break, they were unable to do so." (*Id.* at ¶ 32.)

2

Plaintiff also appears to claim that the meal periods were late, alleging that "Defendants employed Plaintiff for shifts of five (5) or more hours without clocking out for any meal period and without paying him premium wages." (*Id.* at ¶ 38.)

Regarding second meal periods, "Defendants employed Plaintiff for shifts of ten (10) or more hours without providing him with a second meal period and without paying him premium wages." (*Id.* at ¶ 43.) "Moreover, Defendants['] written policies do not provide that employees must take their second meal break if they work a shift often (10) hours or more, or that the second meal period must commence before the end of the tenth hour of work, unless waived." (*Id.* at ¶ 46.)

**Second Cause of Action: Failure to Provide Rest Periods (California Labor Code §§ 204, 223, 226.7, and 1198)**. Plaintiff alleges that "Defendants failed to provide Plaintiff with a net rest period of at least ten (10) minutes for each four (4) hour work period, or major portion thereof." (*Id.* at ¶ 62.) Defendants' "policy or practice" of not providing these rest breaks applied to the entire proposed class. (*Id.* at ¶ 46.) Further, Defendant "maintained a policy or practice of impeding, discouraging, and dissuading Plaintiff and the Rest Break Class from taking rest breaks." (*Id.* at ¶ 63.) "[T]here were no other external oral or written communications concerning rest breaks from Tractor Supply Company in their store location other than the handbook as delineated and cited to in ¶ 27 [sic] supra." (*Id.* at ¶ 65.)

Defendant "failed to provide Plaintiff and the Rest Break Class rest breaks by regularly understaffing its stores," and by "fail[ing] to regularly schedule rest breaks[.]" (*Id.* at ¶¶ 66-67.) Further, "Plaintiff and putative class members were criticized and chastised by Tractor Supply Company management if they attempted to take their rest breaks." (*Id.* at ¶ 68.)

**Third Cause of Action: Failure to Pay Hourly and Overtime Wages (California Labor Code §§ 223, 510, 1194, 1197, and 1198)**. Plaintiff alleges that Defendants maintained a policy or practice of manually deducting time from Plaintiff's and other employees' time cards, resulting in off-the-clock work for which Plaintiff and proposed class members were not compensated. (*Id.* at ¶¶ 90-92.)

**Fourth Cause of Action: Failure to Provide Accurate Wage Statements (California Labor Code § 226)**. Plaintiff alleges, among other things, that Defendants failed to provide him and

the relevant class members "with written wage statements with accurate entries for hours worked, the inclusive dates of the period for which the employee is paid, corresponding wage rates, and gross and net wages, as a result of not paying him overtime, premium and vacation wages." (*Id.* at ¶ 101.)

**Fifth Cause of Action: Failure to Timely Pay All Final Wages (California Labor Code §§ 201-203)**. Plaintiff also alleges that Defendants failed to timely pay him all final wages following his termination, including "all of his earned and unpaid overtime, premium, and vacation wages." (*Id.* at ¶ 111.) Further, Defendants failed to timely pay class members all of their final wages following termination or resignation. (*Id.* at ¶ 112.)

**Sixth Cause of Action: Unfair Competition (California Business and Professions Code §§ 17200, et seq.)**. Plaintiff's claim under California's Unfair Competition Law ("UCL") re-alleges much of Plaintiff's earlier allegations, but also includes allegations regarding Defendants' use of pay cards to pay employee wages, which results in discounted wage payments, as well as wrongful forfeiture of accrued vacation pay. (*Id.* at ¶¶ 117-167.)[1]

Plaintiff filed his original complaint in Alameda County Superior Court on April 25, 2013. Defendant removed the case to federal court approximately one month later, asserting jurisdiction under the Class Action Fairness Act. Plaintiff subsequently filed a First Amended Complaint, which this Court dismissed with leave to amend for failure to state a claim under Rule 12(b)(6). (Dkt. No. 32.) The Court then dismissed Plaintiff's Second Amended Complaint under Rule 12(b)(6). (Dkt. No. 44.) Plaintiff timely filed his TAC, and Defendant now moves to dismiss claims one and two, as well as claims four through seven to the extent they depend on his first two causes of action.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the

---

[1] Plaintiff's TAC also includes a seventh claim for civil penalties for Defendants' alleged Labor Code violations. (*Id.* at ¶¶ 168-174.)

4

1    court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light
2    most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d
3    1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory
4    or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside*
5    *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see*
6    *also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a
7    claim on the basis of a dispositive issue of law").
8         Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under
9    which a party is only required to make "a short and plain statement of the claim showing that the
10   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation
11   of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.
12   at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a
13   motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*,
14   652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply
15   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to
16   give fair notice and to enable the opposing party to defend itself effectively"). The court must be able
17   to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556
18   U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-
19   specific task that requires the reviewing court to draw on its judicial experience and common sense."
20   *Id.* at 663-64.
21        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request
22   to amend the pleading was made, unless it determines that the pleading could not possibly be cured by
23   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal
24   quotation marks and citations omitted).

## DISCUSSION

**A.     First and Second Causes of Action: Failure to Provide Meal Periods and Rest Breaks**.

27        Under California Labor Code Section 512(a), an employer has "an obligation to provide a
28   meal period to its employees." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040

(2012). This obligation is generally satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so." *Id.* Further, Under California Labor Code Section 226.7(b), an employer is prohibited from requiring employees to work during a rest period mandated by a wage order. While the requirements for a claim under the Labor Code are straightforward—the employer failed to provide the requisite meal or rest period—a plaintiff cannot state such a claim without any factual allegations supporting the claim. *See Iqbal*, 556 U.S. at 678; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

In its first Order dismissing Plaintiff's complaint, the Court held that "Defendant's alleged failure to 'appropriately' advise Plaintiff and the class of meal break rights may be evidence that Defendant did not provide Plaintiff and the putative class a meal break as required by law. The bare allegation without more, however, does not state a claim." (Dkt. No. 32 at 8.) The Court emphasized in its most-recent Order that the focus is not on whether an employer "appropriately" advised an employee of their break rights; "[r]ather, Plaintiff must allege facts that plausibly suggest that Defendant did not in some way authorize the breaks, and therefore such breaks were not provided, as required by the Labor Code." (Dkt. No. 44 at 6.) The Court concluded that because the SAC "fails to include any facts about Defendant's actions at his job that caused him to miss meal and rest breaks as alleged in the SAC"—including whether a local policy, written or otherwise, existed at his work location—"the Court cannot draw the plausible inference that Defendant failed to authorize breaks." (*Id.* at 7.)

Plaintiff's TAC includes new allegations regarding the absence of a local policy, as well as Defendant's alleged conduct in pressuring Plaintiff not to take breaks. The Court concludes that, reading the TAC in the light most favorable to Plaintiff, the allegations regarding the absence of a local policy are sufficient to state claims for failure to provide meal and rest breaks.

In dismissing Plaintiff's SAC, the Court noted that "Plaintiff has still not alleged that Defendant lacked a meal break policy." (*Id.*)  Indeed, Plaintiff alleged that Defendant had a policy, at least at the national level.  Although the policy referred to other policies for particular work locations, (Dkt. No. 46 ¶ 28 ("Team Members are expected to take the entire rest and meal period each day as outlined in the Meal and Rest Period Policy for their work location.")), Plaintiff's allegations were silent as to whether a local policy existed at his work location.  Plaintiff's TAC, however, now alleges that "no other external policies were provided at their work location to him and the class concerning meal breaks." (*Id.* at ¶ 29.)  There were also "no other oral or written communications at their work location from Tractor Supply Company other than the handbook as delineated and cited to in ¶ 27 [sic] supra attempting to explain the their [sic] meal break rights." (*Id.* at ¶ 31.)  "[T]here were no posters advising employees of their meal break rights in their Tractor Supply Company's store location." (*Id.* at ¶ 33.)  With respect to rest breaks, Plaintiff alleges "there were no other external oral or written communications concerning rest breaks from Tractor Supply Company in their store location other than the handbook as delineated and cited to in ¶ 27 [sic] supra." (*Id.* at ¶ 65.)

When construed in the light most favorable to Plaintiff, these allegations plausibly suggest that Defendant lacked a meal and rest break policy for Plaintiff's work location.  Beyond the employee handbook referring to a national policy, Plaintiff alleges that "no other external policies were provided" concerning meal breaks, even though the national policy referred employees to policies for their work locations.  (*Id.* at ¶ 29.)  Plaintiff further alleges that, besides the handbook quoted in Paragraph 28, there were "no other external oral or written communications concerning rest breaks." (*Id.* at ¶ 65.)[2]  If no other policy was provided or communicated—either written or otherwise—it is plausible to infer that Defendant lacked a policy at the local level.  It is further plausible to infer that without a break policy and without any posting of Wage Order posters, Defendant did not authorize breaks, and therefore breaks were not provided, as required by the Labor Code.  (*See* Dkt. No. 32 at 7 ("[A]n employer's lack of a meal break policy may subject the employer to liability because it suggests that the employer did not provide meal breaks to its employees . . . ." (emphasis omitted)).)

---

[2] Although it is not entirely clear what Plaintiff means when referring to an "external" policy or communication—as opposed to, presumably, an "internal" policy or communication—Defendant does not identify this apparent qualification, let alone argue that it is significant.

7

Defendant cites no authority for the proposition that allegations regarding an absence of a break policy are insufficient to state a claim under the Labor Code. Rather, Defendant argues that the TAC does not actually allege the absence of a policy. (*See* Dkt. No. 53 at 2 ("[T]hat a policy was not *communicated* does not establish that it did not exist.").) At this stage in the case, Plaintiff need not "establish" that the policy does not exist; instead, he must merely plead facts that plausibly suggest a claim for relief. Further, while Plaintiff does not exactly allege that "no local policy existed," his allegation that nothing was provided or otherwise communicated to Plaintiff regarding Defendant's break policy at his work location indicates, at least implicitly, the absence of a local policy. Moreover, even if a local policy did exist, the salient allegation is that the policy was never communicated to Plaintiff, which, as already discussed, plausibly suggests that breaks were not authorized. Defendant has presented no case that has found similar allegations insufficient to state a claim. Defendant's cited authority is inapposite. *See Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008) (rejecting, on a motion for summary judgment, employee's "proposition that an employer is required to schedule meal breaks for its employees or to inform employees of meal break rights other than to post Wage Order posters," but not discussing whether the absence of any communication regarding break policy plausibly suggests that breaks were not provided); *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, at *6 (C.D. Cal. Nov. 28, 2011) (rejecting plaintiff's argument that supervisor was required to inform her of her right to take a second meal period where the existence of a written policy was undisputed and where employer shut down its production line so employees could take meal breaks during each shift).

The Court is also not persuaded that Plaintiff's new allegations are not materially different from Plaintiff's earlier allegation that he was not "appropriately" advised or informed of his meal and rest break rights. Plaintiff now alleges that Defendant's break policy, at least beyond the national policy, was not discussed, provided, or otherwise communicated to him *at all*. This materially differs from Plaintiff's previous vague allegations that sought to hold Defendant liable for not "appropriately" advising Plaintiff of his rights, notwithstanding whether breaks were actually provided to Plaintiff. Further, the Court's holding in this Order as to the sufficiency of Plaintiff's allegations is not in conflict with its earlier holding in this case that an employer has no duty to advise

8

an employee of his break rights. As the Court stated in its Order granting Defendant's motion to dismiss the FAC, "an employer's lack of a meal break policy may subject the employer to liability because it suggests that the employer did not *provide* meal breaks to its employees—not because the employer failed to advise its employees of their legal rights." (Dkt. No. 32 at 7.)

Finally, the Court's conclusion as to the adequacy of the TAC is not based on Plaintiff's new allegations that he was somehow prevented or discouraged from taking breaks, and that he was "criticized and chastised" if he attempted to take a rest break. (Dkt. No. 46 at ¶¶ 26, 63, 68.) Plaintiff's allegations are vague and conclusory and devoid of any facts as to the nature of the alleged discouragement and criticism. Without such facts, Plaintiff's conclusory assertions that he was somehow pressured to not take breaks fail to state a claim. *See Twombly*, 550 U.S. at 545 (holding that a complaint "requires more than labels and conclusions" and the factual allegations must be sufficient "to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true"); *see also Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581, at *5 (N.D. Cal. Apr. 18, 2013) (granting motion to dismiss where plaintiffs alleged that Wal–Mart "'pressured, incentivized, and discouraged' the Drivers from taking lunch breaks, [yet] they d[id] not provide *any* facts surrounding these alleged tactics"). Plaintiff's conclusory allegations regarding Defendant "regularly understaff[ing]" its stores so that Plaintiff was "unable" to take breaks, (Dkt. No. 46 at ¶¶ 32, 66), are similarly insufficient as Plaintiff alleges no facts as to how such regular understaffing prevented him from taking breaks.

The Court accordingly DENIES Defendant's motion to dismiss Plaintiff's first and second causes of action.

**B.  Fourth and Fifth Causes of Action: Failure to Provide Accurate Wage Statements and Failure to Pay All Final Wages**

Defendant also moves to dismiss Plaintiff's fourth and fifth claims to the extent they are based on the contention that premium wages owed for failure to provide meal and/or rest periods constitute "wages" that must be included on wage statements and timely provided upon resignation or

termination. At this early stage in the litigation, the Court DENIES Defendant's motion on this basis.[3]

California Labor Code Section 226(a) requires that an employer periodically furnish to the employee an itemized statement showing, among other things, "wages earned." Section 203(a) of the Labor Code forbids an employer from willfully failing to pay "any wages" of an employee who quits or is discharged. The Labor Code defines "wages" as follows: "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code § 200(a).

The question presented here is whether "wages" as used in Sections 226(a) and 203(a) includes "premium wages," which are awarded as a remedy for failure to provide meal and/or rest breaks. *See* Cal. Labor Code § 226.7(b) ("If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007) (holding that Section 226.7's "additional hour of pay" is a "premium wage intended to compensate employees, not a penalty" and therefore claims under Section 226.7 are not subject to the one-year statute of limitations governing penalties); *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1256 (2012) ("[W]e held in *Murphy* that this remedy [Section 226.7(b)] is a 'wage' for purposes of determining what statute of limitations applies to section 226.7 claims.").

Neither party presents a persuasive argument as to whether premium wages are wages under Sections 226 and 203. Defendant's argument that premium wages are not "amounts for labor performed by employees," Cal. Labor Code § 200(a), is directly contrary to *Murphy*. As noted above, *Murphy* held that Section 226.7's "additional hour of pay" is a "wage," at least for purposes of determining the appropriate statute of limitations. Defendant's contention echoes an argument the

---

[3] The Court did not address this issue in its earlier Orders dismissing Plaintiff's complaints because Plaintiff's fourth and fifth causes of action rely, at least in part, on Plaintiff's first two claims, which, until now, were not sufficiently pled.

*Murphy* court rejected: that Section 226.7's remedy is not a wage because it is not directly tied to the amount of time an employee has actually worked. *See* 40 Cal. 4th at 1112-13 (comparing Section 226.7 payments to, among other things, overtime wages, which "use[] the employee's rate of compensation as the measure of pay and compensates the employee for events other than time spent working"). To the extent Defendant argues that *Murphy*'s holding is confined to the statute of limitations matter at issue there, Defendant fails to articulate a non-conclusory argument in support of its contention.

Defendant also asserts that the California Supreme Court's holding in *Kirby* precludes a finding that Section 226.7 premium wages are wages under Sections 226 and 203. The Court is not persuaded. The relevant issue in *Kirby* was whether attorney's fees were available under California Labor Code Section 218.5 for a Section 226.7 action. The court held they were not, reasoning that Section 218.5's requirement that the action be "brought for the nonpayment of wages" did not include Section 226.7 actions since "a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." *Kirby*, 53 Cal. 4th at 1257. The premium wages are simply the remedy that arises from the legal violation of failing to provide meal or rest breaks. *Id.* at 1256-57. The court further held that its decision was consistent with *Murphy* because "[t]o say that a section 226.7 remedy is a wage, however, is not to say that the *legal violation* triggering the remedy is nonpayment of wages." *Id.* at 1257. Defendant fails to explain why *Kirby*'s holding affects whether Section 226.7 premium wages are included within Sections 226 and 203.

Rather than providing an explanation, Defendant cites to *Jones v. Spherion Staffing LLC*, 2012 WL 3264081, at *8-9 (C.D. Cal. Aug. 7, 2012), which applied *Kirby* in holding that Sections 226 and 203 are not applicable to Section 226.7 premium wages. The *Jones* court focused on *Kirby*'s observation that:

> [W]hether or not [the premium wage] has been paid is irrelevant to whether section 226.7 was violated. In other words, section 226.7 does not give employers a lawful choice between providing either meal and rest breaks or an additional hour of pay. An employer's failure to provide an additional hour of pay does not form part of a section 226.7 violation, and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation. The failure to provide required meal and rest breaks is what triggers a violation of section 226.7. Accordingly, a section 226.7 claim is not

11

an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks.

53 Cal. 4th at 1256-57; *see also Jones*, 2012 WL 3264081 at *8. Based on this language in *Kirby*, the *Jones* court reasoned:

> Thus, even if the employee agreed to work through a required break in exchange for one hour of pay, and if the extra pay were provided to the employee and recorded on the employee's wage statement, the employee would nonetheless have a claim pursuant to section 226.7. Accordingly, because the employer cannot remedy a section 226.7 violation by compensating the employee, the wrongdoing by the employer is more than the failure to pay wages; it is a failure to ensure the employee's health and wellbeing through reasonable working conditions.

2012 WL 3264081 at *8. The Court is not persuaded by *Jones*. As an initial matter, while *Kirby* is helpful in determining the contours of a Section 226.7 claim, it says nothing particular to the question of whether a Section 226.7 premium wage is a wage under Sections 203 and 226. Further, even though an employer cannot evade Section 226.7 liability by paying an employee, or including in a wage statement premium wages due for a missed meal or rest break, it does not follow that Section 226.7 wages are exempt from the requirements that wages be timely paid upon termination or resignation and included in wage statements. Rather, *Kirby*'s emphasis that payment of Section 226.7 premium wages does not extinguish liability under that statute suggests independence between a Section 226.7 claim and Section 226.7 premium wages such that claims beyond Section 226.7 may be brought on account of the failure to pay or properly document those wages. As the *Murphy* court stated, Section 226.7 premium wages are valid and due even in the absence of litigation pursuant to Section 226.7:

> [A]n employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period. In that way, a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime. By contrast, Labor Code provisions imposing penalties state that employers are "subject to" penalties and the employee or Labor Commissioner must first take some action to enforce them. The right to a penalty, unlike section 226.7 pay, does not vest until someone has taken action to enforce it.

40 Cal. 4th at 1108 (citations omitted). If an employee is entitled to the additional hour of pay "immediately" upon being forced to miss a rest or meal period, it appears inconsistent to conclude that

12

an employee is not also immediately entitled to have the additional hour of pay documented on their wage statements and timely paid upon termination or resignation.

The *Jones* court also relied on a hypothetical—where an employer's liability arises from an employee's loss of one minute of lunch time—to conclude that premium wage claims under Sections 203 and 226 would result in a "double recovery" for the employee. 2012 WL 3264081 at *9. That is, an employee would receive her Section 226.7 remedy—one hour of pay—plus waiting time penalties and damages for an inadequate wage statement. What *Jones* labels a "double recovery," however, may simply be an accurate depiction of an employer's liability under the Labor Code. Further, the "double recovery" scheme identified in *Jones* appears no different from what an employee would be entitled to for an employer's failure to pay and properly document overtime or minimum wages. *See* Cal. Labor Code § 1194 ("[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation."). There is no discussion, however, in either the briefs or the caselaw as to whether premium wages should be treated similar to overtime and minimum wages. The absence of this analysis is significant since *Murphy* concluded that, at least for statute of limitation purposes, "a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime." 40 Cal. 4th at 1108.

Defendant's reliance on *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284 (C.D. Cal. Nov. 28, 2011), is also unpersuasive. *Nguyen* held that an employee could not bring a claim under Section 226, reasoning that 1) the plain language of Section 226(a) does not require that premium "payments" be included on wage statements, 2) the legislative history—as observed by a California court in an unreported decision—"reveals that the purpose of the statute was to ensure that employers provide accurate wage statements to employees, not to govern employers' obligations with respect to meal periods," and 3) that a Section 226.7 remedy is properly considered liquidated damages, not wages. 2011 WL 6018284 at *8 (internal quotation marks omitted). To the extent *Nguyen* relied on the belief that a Section 226.7 remedy is not a wage, the court's conclusion is directly contrary to *Murphy*. Further, the court's reliance on legislative history is unhelpful because it does not cite any.

13

On the other hand, Plaintiff's cited authorities do not go beyond summarily concluding that *Murphy*'s holding extends to claims under Sections 203 and 226. *See Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 464-65 (C.D. Cal. 2012) (referring to "settled law," but citing only cases where the issue was not in dispute); *see also Abad v. Gen. Nutrition Centers, Inc.*, 2013 WL 4038617, at *3-4 (C.D. Cal. Mar. 7, 2013) (summarizing *Murphy* and *Kirby* and concluding that *Murphy* is "controlling" for plaintiff's Section 226 claim). Other courts have similarly found valid Section 203 and 226 claims based on Section 226.7 premium wages without analysis. *See, e.g.*, *Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845, at *14 (C.D. Cal. Feb. 18, 2009) ("The California Supreme Court held in *Murphy* . . . that payments for foregone meal periods are wages, not penalties. Hence these foregone payments would be wages due at the termination of employment pursuant to section 203."); *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1047 (C.D. Cal. 2012) ("If Ricaldai succeeds on her meal period claim, USIS further violated Section 226 by failing to include premium pay for each missed meal period."). Unlike those courts, this Court declines to rule at this stage in the case that *Murphy* is controlling. Plaintiff has failed to provide any argument as to why what the *Kirby* court seemed to imply was a narrow holding—*see* 53 Cal. 4th at 1256 ("[W]e held in *Murphy* that this remedy [Section 226.7(b)] is a 'wage' *for purposes of determining what statute of limitations applies to section 226.7 claims*" (emphasis added))—should control other issues not before the court in *Murphy*.

Given the uncertainty in the caselaw, and the lack of analysis from the parties—in particular, the failure to reference any legislative history—the Court cannot conclude that Plaintiff's fourth and fifth claims, to the extent they rely on premium wages owed under Section 226.7, fail as a matter of law. Defendant's motion to dismiss the TAC on this basis is accordingly DENIED without prejudice.[4]

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is DENIED. The case management conference currently scheduled for March 13, 2014 is continued to March 20, 2014 at

---

[4] Because the remainder of Defendant's motion seeks to dismiss only Plaintiff's claims that are premised on the first and second causes of action, the Court DENIES the motion as to those claims given that Plaintiff's first and second causes of action are sufficiently pled, as discussed above.

14

1:30 p.m., a joint case management conference statement shall be filed seven days prior to the conference.

**IT IS SO ORDERED.**

Dated: February 3, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

15