UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BELLINGHAUSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>TRACTOR SUPPLY COMPANY,<br><br>    Defendant. | Case No. 13-cv-02377-JSC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 69 |

In this pre-certification class action dispute, Plaintiff Patrick Bellinghausen alleges that, among other things, Defendant Tractor Supply Company failed to implement legally compliant meal and rest period policies. Now pending before the Court is the parties' joint motion for preliminary approval of a class action settlement. (Dkt. No. 69.) After reviewing the proposed settlement, and with the benefit of oral argument on November 20, 2014 and the parties' revised Class Notice, the Court GRANTS the motion as outlined below.

**BACKGROUND**

Plaintiff, a California citizen, worked for Defendant, a Delaware corporation, in an hourly position as retail-store clerk from approximately April 2010 to January 2013. (Dkt. No. 46 ¶ 2.) Plaintiff's Third Amended Complaint ("TAC") includes seven causes of action: 1) Failure to Provide Meal Periods (California Labor Code §§ 204, 223, 226.7, 512, and 1198); 2) Failure to Provide Rest Periods (California Labor Code §§ 204, 223, 226.7, and 1198); 3) Failure to Pay Hourly and Overtime Wages (California Labor Code §§ 223, 510, 1194, 1197, and 1198); 4) Failure to Provide Accurate Wage Statements (California Labor Code § 226); 5) Failure to Timely Pay All Final Wages (California Labor Code §§ 201-203); 6) Unfair Competition (California Business and Professions Code §§ 17200, et seq.); and 7) Civil Penalties (California Labor Code

1  §§ 2698, et seq.). (Dkt. No. 46.)

2  Plaintiff filed his original complaint in Alameda County Superior Court on April 25, 2013. Defendant removed the case to federal court approximately one month later, asserting jurisdiction under the Class Action Fairness Act. Plaintiff subsequently filed a First Amended Complaint, which this Court dismissed with leave to amend for failure to state a claim under Rule 12(b)(6). (Dkt. No. 32.) The Court then dismissed Plaintiff's Second Amended Complaint under Rule 12(b)(6). (Dkt. No. 44.) Defendant's subsequent motion to dismiss Plaintiff's TAC was denied, and Defendant answered the TAC on February 18, 2014.

## SETTLEMENT PROPOSAL

On April 2, 2014, the parties participated in a full day of mediation with Susan Haldeman. "Both parties prepared detailed mediation briefs, and through the use of experts the parties developed models for estimating Defendant's potential liability exposure in this action on a class-wide basis." (Dkt. No. 69-1 ¶ 9.) Also in anticipation of mediation, Defendant produced "hundreds of pages of documents." (*Id.* ¶ 8.) "These documents included, among other things, policies relating to meal and rest periods, payroll, time keeping, vacation pay, and Plaintiff's personnel file. Defendant also produced more than one million lines of payroll data." (*Id.*) In the weeks that followed the mediation, the parties—with the continued assistance of the mediator—continued engaging in their "arm's length" negotiations and ultimately agreed to the settlement now before the Court. (*Id.* ¶ 10.)

### A. Provisions

The parties' agreement provides a settlement fund of $1,000,000. Reduced from that fund are 1) attorney's fees up to 30 percent of the fund ($300,000); 2) actual litigation costs up to $30,000; 3) enhancement awards to Plaintiff up to $20,000; 4) payment of $35,000 in civil penalties to the Labor Workforce and Development Agency ("LWDA"); and 5) claims administration expenses up to $16,000. The remaining funds are then distributed to the class members who do not opt out of the class. Class members will receive a *pro rata* share of the fund

based on his or her "compensable hours"[1] worked during the class period, less statutorily required tax withholdings. (Dkt. No. 69-2 ¶ 4.4.) The number of compensable hours will be disclosed to each class member in the notice of settlement; further, each class member will be given an individualized estimated figure of monetary recovery based on their number of compensable hours. All checks to non-objecting class members not cashed within 120 days of mailing will escheat to the State of California and be administered in accordance with California's Unclaimed Property Law (Cal. Civ. Code § 1500, et seq.). No settlement funds will revert to Defendant.

### B.     Proposed Class

In the joint motion, the parties stated that "Plaintiff seeks to represent a putative class of all non-exempt employees employed by Tractor Supply in California between April 25, 2009 until the date this Court grants preliminary approval, except any employee who has individually adjudicated his or her claims during that same time period." (Dkt. No. 69 at 3.) Although the parties' settlement agreement does not define a proposed "Class," the agreement refers to "Putative Class Members" as "all persons employed in California by [Defendant] as an 'Hourly Employee' at any time during the Class Period." (Dkt. No. 69-2 ¶ 1.36.) The agreement, in turn, defines "Hourly Employee" as "an individual employed by [Defendant] in California and classified as a non-exempt, hourly employee" (*id.* ¶ 1.25), and the "Class Period" as the period from April 25, 2009 through the date the Court enters an order granting preliminary approval of the settlement (*id.* ¶¶ 1.9, 1.18). The parties estimate that there are currently 1,062 putative class members. (Dkt. No. 69-1 ¶ 13.)

## DISCUSSION

A class action settlement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the

---

[1] The settlement agreement defines "compensable hours" as "the actual number of hours worked by the Settlement Class member as a nonexempt employee in California during the Class Period." (Dkt. No. 69-2 ¶ 4.4.) This number will be determined from Defendant's payroll records, and, as explained below, a class members will be able to dispute their assigned compensable hours number.

3

settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the Court temporarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified and a final "fairness" hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

### A.  Conditional Certification of the Settlement Class

Class actions must meet the following requirements prior to certification:

> 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), a potential class must also meet one of the conditions outlined in Rule 23(b)—of relevance here, the condition that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating the proposed class, "pertinent" matters include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiffs have satisfied their burden to demonstrate that the proposed class satisfies each element of Rule 23.

### 1. Rule 23(a)

#### a. Numerosity

There is no exact class size that meets the numerosity requirement; rather, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied," particularly where the proposed "class is geographically dispersed" with "difficult to identify" members. *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005) (internal quotation marks and citation omitted). Numerosity is satisfied here. (*See* Dkt. No. 69-1 ¶ 13.)

#### b. Commonality

The commonality requirement is "construed permissively," and "[a]ll questions of fact and law need not be in common." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In fact, both "divergent factual predicates" with "shared legal issues" and "a common core of salient facts coupled with disparate legal remedies within the class" can be sufficient. *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672 BEN (BLM), 2012 WL 4009547, *2 (S.D. Cal. Sept. 12, 2012) (quoting *Hanlon*, 150 F.3d at 1019).

In this case, the common questions of law and fact center around Defendant's employment practices and policies; for example, whether Defendant maintained legally compliant meal and rest period policies; whether Defendant paid class members with instruments that were subject to discount in violation of California Labor Code Section 212; and whether Defendant subjected class members' accrued vacation to unlawful forfeiture. The parties assert that, "based on discovery responses and documents produced pursuant to the mediation privilege," class members are subject to the "same policies and procedures" with regard to meal periods, rest periods, reporting time pay, paycards, and payroll. (Dkt. No. 69 at 13.) If these policies and procedures are unlawful, then each class member will have been injured by Defendant's conduct. The commonality requirement is accordingly satisfied.

#### c. Typicality

Typicality is similar to commonality, and the two "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The typicality requirement is meant "to assure that the

interest of the named representative aligns with the interests of the class" and is satisfied when class members "have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citations omitted). The injuries of the named plaintiffs and other class members need not be identical as long as they are similar and from the same disputed conduct. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 635 (C.D. Cal. 2009). The typicality requirement is satisfied here because Plaintiff alleges that he, like the other class members, worked for Defendant in California during the class period and was subjected to the same wage-and-hour policies and procedures at issue in this litigation.

### d. Adequacy of Representation

Adequacy of representation is determined by answering two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Conflict of interest inquiry "is especially critical when the class settlement is tendered along with a motion for class certification." *Id.* "Representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997). In addition, "a class representative must not be antagonistic or have conflicts of interest with other potential class members." *Andrews Farms v. Calcot, LTD.*, No. CV-F-07-0464 LJO DLB, 2010 WL 3341963, at *4 (E.D. Cal. Aug. 23, 2010). A named plaintiff must otherwise meet a fairly low threshold to properly represent the class: "[t]he fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011). With regard to vigorous representation, "a key consideration is the competency of counsel" and whether "the named plaintiffs have participated in the litigation process." *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 596 (E.D. Cal. 2008). In addition, "class counsel must be qualified, experienced, and generally able to conduct the class action litigation." *Andrews Farms*, 2010 WL 3341963, at *4.

Here, Plaintiff's involvement in this action included reviewing and assisting with discovery, traveling to and attending the full-day mediation, and continually conferring with his counsel regarding the case. (Dkt. No. 69-1 ¶ 17.) Nothing about the facts or genre of this case suggests any antagonism or conflicting interests between the named Plaintiff and the potential class members. In addition, Plaintiff's lead counsel Shaun Setareh has represented numerous class actions in the wage-and-hour field. (*See id.* ¶ 19.) The Court concludes that this case has adequate representation.

As outlined above, Plaintiffs have satisfied the requirements of Rule 23(a).

### 2.  Rule 23(b)

To certify his class, Plaintiff must meet "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Here, Plaintiff argues that Rule 23(b)(3) is met, which requires establishing "the predominance of common questions of law or fact and the superiority of a class action relative to 'other available methods for the fair and efficient adjudication of the controversy.'" *In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *6 (N.D. Cal. June 1, 2005) (quoting Fed. R. Civ. P. 23(b)(3)).

#### a.  Predominance

Rule 23(b)(3) first requires "a predominance of common questions over individual ones" such that "the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This "inquiry focuses on the relationship between the common and individual issues." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal citation and quotation marks omitted). In particular, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594.

The core common questions in this case—the lawfulness of the Defendant's policies and practices with respect to meal periods, rest periods, payment of reporting time pay, etc.—predominate over differences in how Defendant's individual store managers implemented the policies and practices. As such, the Court concludes that common questions of law and fact

predominate.

### b. Superiority

A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) *modified,* No. C05-04993 MJJ, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). There is no indication that members of the proposed class have a strong interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages"). The Court concludes that a class action is superior to other forms of litigation in this action.

After reviewing the above requirements pursuant to Rule 23, the Court finds that conditional class certification for settlement purposes is proper.

### B. Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In considering this appointment, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). As noted above, Plaintiff's counsel has litigated numerous wage-and-

hour class action cases, and is thus experienced in the field. (*See* Dkt. No. 69-1 ¶¶ 19-20.) In this action, Plaintiff's counsel has defended several motions to dismiss, filed three amended complaints, and participated in an ultimately fruitful mediation. The Court accordingly concludes that counsel has the requisite experience, knowledge, qualifications, and resources to represent the class members in this action and that the reasons for pursuing settlement at this stage in the litigation do not call into question his representation of absent class members. Plaintiff's counsel is thus appointed to serve as Class Counsel for the purposes of this settlement.

### C. Preliminary Approval of the Settlement

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a court typically considers the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* In these cases, courts must show not only a comprehensive analysis of the above factors, but also that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on the face of a settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* In *Bluetooth*, the court identified three such signs:

> (1) when class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by the defendant (which carries the potential of enabling a defendant to pay class counsel excessive fees

9

>and costs in exchange for counsel accepting an unfair settlement); and
>
>(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.*

The Court cannot fully assess all of these fairness factors until after the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). Instead, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At this juncture, "[p]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, [4] and falls within the range of possible approval." *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1. Fairness factors

#### a. The proposed settlement

This first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D. at 396. Particularly with pre-certification settlements, enough information must exist for the court to assess "the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement" in order to determine if it is fair and adequate. *Id.* at 397 (internal quotation marks omitted).

The Court is satisfied that the means by which the parties investigated the claims and reached settlement were sufficient. The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Villegas*, 2012 WL 5878390, at *6; *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"). However, the use of a neutral mediator "is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Bluetooth*, 654 F.3d at 948.

Here, the parties engaged in both formal and informal discovery prior to deciding to engage in private mediation. In anticipation of mediation, Defendant produced "hundreds of pages of documents," including "policies relating to meal and rest periods, payroll, time keeping, [and] vacation pay." (Dkt. No. 69-1 ¶ 8.) In addition, "[b]oth parties prepared detailed mediation briefs, and through the use of experts the parties developed models for estimating Defendant's potential liability exposure in this action on a class-wide basis." (*Id.* ¶ 9.) With the help of the mediator at the full-day mediation, as well as in the weeks that followed, the parties were able to assess the information available to them and accurately estimate and negotiate a fair settlement award. Based on Plaintiff's expert's analysis of Plaintiff's seven causes of action, Plaintiff estimates Defendant's potential liability to be between $3,739,868 and $11,565,677 for all the claims. The settlement fund of $1,000,000 equals between approximately 27 percent and nine percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards.

Although these percentages appear at least potentially fair, the Court notes one area of concern. At least for some of Plaintiff's claims, California law may provide for an award of statutory attorney's fees. *See* Cal. Lab. Code § 1194(a) ("Any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . [and] reasonable attorney's fees, and costs of suit."); *see also id.* § 218.5 (authorizing an award of attorney's fees and costs to a party who prevails in an "action brought for the nonpayment of

11

1  wages, fringe benefits, or health and welfare or pension fund contributions"); *see also id.*

2  § 2699(g) (providing an award of attorney's fees and costs to an employee who prevails on their

3  claim for civil penalties under Section 2699(f)).[2]  Despite the availability of statutory fees, the

4  parties' motion does not include an estimation of a potential fee award, which is counter to

5  typical practice as described by the Ninth Circuit:

> [I]n a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by Evans.  In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles.  Alternatively, the parties may negotiate and agree to the value of a common fund (*which will ordinarily include an amount representing an estimated hypothetical award of statutory fees*) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles.

*Staton*, 327 F.3d at 972 (emphasis added).  If the potential recovery of statutory attorney's fees and costs are provided as separate line items, the amount of the settlement as a percentage of a potential recovery would decrease.  So the Court may fully evaluate the potential recovery at the final approval stage, the parties should include their estimation for the recovery of statutory fees and costs, if any, along with their estimation for the recovery of monetary damages.

Finally, the lack of collusion among the parties is demonstrated from the absence of both a "clear sailing" provision and a reversion to Defendant of any unclaimed funds.  The Court accordingly finds no evidence of collusion among the parties.

---

[2] Plaintiff's third cause of action is for failure to pay minimum and overtime wages, and thus falls squarely within Section 1194(a). An employer who "knowing[ly] and intentional[y]" fails to provide accurate wage statements, Plaintiff's fourth claim, is liable for attorney's fees and costs. Cal. Lab. Code § 226(e)(1). And Plaintiff's fifth claim for failure to timely pay all final wages is arguably a claim for "nonpayment of wages" and thus may meet Section 218.5's requirements, though the Court finds no case on point. Further, Plaintiff's seventh cause of action for civil penalties includes a claim for attorney's fees under Section 2699(g). Meanwhile, Plaintiff's first and second claims are *not* covered by either fee-shifting statute, *see Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1255-56 (2012) (holding that neither Section 1194(a) nor Section 218.5 apply to claims under Section 226.7 for missed meal or rest periods), and Plaintiff's sixth cause of action for unfair competition "does not expressly provide for attorney's fees," *Quiroz v. Praetorian Ins. Co.*, No. 4:14-cv-01652 HRL, 2014 WL 3845418, at *2 (N.D. Cal. Aug. 5, 2014).

### b. Obvious deficiencies

The Court next considers "whether there are obvious deficiencies in the Settlement Agreement." *Harris*, 2011 WL 1627973, at *8. The Court has identified the following two deficiencies—or potential deficiencies—in the settlement agreement: 1) the 30 percent of the fund requested for attorney's fees, and 2) the failure to provide class members the opportunity to object to Plaintiff's motion for attorney's fees and costs.

#### i. Attorneys' fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942 (noting that 25% of the fund is considered the "benchmark" for a reasonable fee). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result. Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Id.* (citations omitted).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon*, 150 F.3d at 1029.

1   The Ninth Circuit recommends that whatever method is used, the district court perform a
2   cross-check using the second method to confirm the reasonableness of the fee, *e.g.*, if the
3   lodestar method is applied, a cross-check with the percentage-of-recovery method will reveal if
4   the lodestar amount surpasses the 25% benchmark. *See Bluetooth*, 654 F.3d at 944-45.

5   Plaintiff seeks an award of attorneys' fees in the amount of 30 percent of the settlement
6   fund; that is, $300,000. Plaintiff argues that a five percent increase from the 25 percent
7   benchmark is appropriate because of the contingent nature of the case and the significant
8   monetary recoveries for the class. (Dkt. No. 69 at 30.) However, Plaintiff fails to show that "the
9   risks associated with this case are [] greater than that associated with any other wage and hour
10  action." *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D.
11  Cal. Oct. 30, 2013) (rejecting plaintiff's contention that contingent nature of the case warranted
12  an increase above the 25 percent benchmark). And while many class members in this case will
13  likely recover a monetary award in the range of several hundreds of dollars, Plaintiff has failed to
14  show that this benefit is exceptional relative to Defendant's potential liability. As noted above,
15  the settlement amount is at least potentially fair, but whether that amount justifies an upward
16  departure of attorney's fees is a different question.

17  At this stage, Plaintiff has failed to persuade the Court that attorneys' fees of 30 percent
18  of the fund are appropriate; however, the Court will wait until final approval to make a
19  determination as to fees. Along with the parties' final approval filings with the Court, Plaintiff
20  shall submit detailed billing records and an explanation of his counsel's hourly rate so that the
21  Court may determine an appropriate lodestar figure. *See Bluetooth*, 654 F.3d at 944-45.

22                          **ii.     Opportunity for class members to object to fee motion**
23  In *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993 (9th Cir.
24  2010), the Ninth Circuit held that Rule 23(h) of the Federal Rules of Civil Procedure "requires a
25  district court to set the deadline for objections to counsel's fee request on a date after the motion
26  and documents supporting it have been filed." This sequence of filing and objection deadlines,
27  however, was not reflected in the parties' original class notice or moving papers.

28  The revised schedule now proposed by the parties is as follows. Within 15 business days

of the preliminary class approval, Defendant must provide the Settlement Administrator with the Class List.  (Dkt. No. 73-2 ¶ 12.)  Within seven calendar days of receipt of the Class List, the Settlement Administrator must mail the Class Notice Packet.  (*Id.* ¶ 13.)  This means that the Class Notice Packet will be mailed around the week of December 24, 2014.  Class counsel will then have until approximately sometime until the second week in January to file and post their motion for attorneys' fees and costs (31 days after the Class Notice Packet mailing).  (*Id.* ¶ 14.)  Any objections to the settlement and/or fees and costs must be submitted within 45 days of the mailing of the Class Notice Packet.  (*Id.* ¶ 8.)  Thus, under this schedule, Class members will have to submit their objections to the fee motion approximately two weeks after the motion is filed.

This schedule leaves too little time for objections to the fee motion.  Accordingly, no later than January 7, 2015, Class Counsel must file and post on the website for class review their motion for attorneys' fees and costs.

One other matter requires comment.  The proposed Class Notice requires objections to the settlement and/or fee motion to be submitted to the Northern District of California.  (Dkt. No. 73-1 ¶ 16.)  The parties' proposed order, however, requires objections to be submitted to the Court *and* mailed to the Settlement Administrator.  (Dkt. No. 73-2 ¶ 8.)  The Court will only require submission to the Northern District as set forth in the proposed Class Notice.

### c. **Preferential treatment**

Under this factor, "the Court examines whether the Settlement provides preferential treatment to any class member." *Villegas*, 2012 WL 5878390, at *7.  Each proposed class member in this case may claim their *pro rata* share of the fund based on his or her compensable hours worked during the class period, less statutorily required tax withholdings.  The settlement further provides that Plaintiff will receive (in addition, apparently) a $15,000 incentive award and $5,000 in consideration for his general release of all claims against Defendant "arising out of any act or event that occurred prior to the Date of Preliminary Approval."  (Dkt. No. 69-2 ¶¶ 9.2, 10.3.)  "Incentive *awards* [as opposed to agreements] are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  There is no evidence that

15

named Plaintiff and counsel agreed prior to the suit to a particular incentive agreement. Though viewed more favorably than incentive agreements, "excess incentive awards may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted). Incentive awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id*. at 958-59.

A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto*, 252 F.R.D. at 669; *Lemus v. H & R Block Enters. LLC.*, No. C 09-3179 SI, 2012 WL 3638550, at *6 (N.D. Cal. Aug. 22, 2012) (finding incentive payments to the named plaintiffs proper after receipt of declarations from the named plaintiffs outlining their involvement in the litigation justifying their awards). No declarations have been provided about the efforts Plaintiff contributed to this action. Without more information, the Court cannot determine whether the incentive payment is fair. The Court notes, however, that the incentive award is 1.5 percent of the gross settlement fund, which is higher than what other courts have found acceptable. *See Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an incentive award representing one percent of the settlement fund was excessive).

The Court also notes that the $15,000 incentive award is three times the amount generally awarded in this District in wage and hour class action settlements. *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013). At this point, Plaintiff has not persuaded the Court that any greater amount should be awarded. While Plaintiff is free to argue in connection with the final approval motion that he should receive more (and he should address more thoroughly why he should even receive $5000), he is on notice

16

that the Court will not award $15,000 based on the record currently before it.

While the Court has concerns about the amount of the proposed incentive payment, it is not concerned about whether that amount unduly influenced Plaintiff to accept a settlement on behalf of the class. The significant settlement amount, lack of a reversion to Defendant, lack of a requirement for "opting in," and a release limited to facts alleged in the lawsuit, satisfy the Court that the settlement is otherwise fair.

### d. Range of possible approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. As noted above, based on Plaintiff's expert's analysis of Plaintiff's seven causes of action, Plaintiff estimates Defendant's potential liability to be between $3,739,868 and $11,565,677 for all the claims. The settlement fund of $1,000,000 equals between approximately 27 percent and nine percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards are deducted. This fund will be distributed to the approximately 1,000 class members who do not opt out. If all of Plaintiff's requested deductions are made, the distributed funds will amount to $600,000, representing a $600 average recovery for each class member. Given the estimated potential recovery, this is a fair outcome. Indeed, if the case were to continue, the outcome is uncertain. Defendant, even now, contests all wrongdoing and that the claims are appropriate for class certification. While Plaintiff asserts that his expert and preliminary discovery support his allegations, continued discovery will escalate the costs of this action and delay resolution. The Court considers that even if "Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation," and these delays will affect "payment to the Class Members and increase the amount of attorneys' fees." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011).

In consideration of these factors, the Court makes a preliminary finding that the proposed settlement is fair, adequate and reasonable and in the best interests of the class members given the

17

uncertainty of continued litigation.

### 2. Notice

For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes

> individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks omitted).

The Court observes two minor deficiencies in the class notice regarding the terms of the settlement. First, Paragraph 20 of the notice, which describes the settlement fund and the amounts proposed for deduction, omits the $35,000 set aside as LWDA penalties; the notice shall include this deduction. (Dkt. No. 73-1 ¶ 20.) Second, Paragraph 21 provides a hypothetical regarding a potential payment to a class member. The hypothetical suggests that the fund may be reduced to as low as $550,000, after accounting for attorneys' fees, costs, etc.; however, the lowest possible balance for the fund is $600,000. (*Id.* ¶ 21.) The parties shall alter this hypothetical as to not confuse class members. Other than the above two points, the Court finds the information provided in the notice meets the requirements of Rule 23(c)(2)(B) and next examines the proposed manner of providing class members with this notice.

The parties' proposed notice plan is also sufficient. The claims administrator will attempt to locate each class member's most up-to-date home address and will send the notice packet to that address, as well as to the class member's email address if such an address is available. Further, the settlement provides for a website to be maintained for the benefit of class members; specifically,

> A static website shall be maintained by the Claims Administrator which shall have links to the Notice of Class Action Settlement, Settlement Allocation Form, and Request for Exclusion Form, Motion for Preliminary Approval, Motion for Attorneys Fees, Costs, and Class Enhancement Award, and Motion for Final Approval of Class Action Settlement.

(Dkt. No. 69-2 ¶ 5.10.)

## CONCLUSION

The Court preliminarily finds that the proposed class meets the requisite certification standards and GRANTS conditional certification of the class for settlement purposes. The proffered settlement agreement, as amended by the parties' stipulation filed November 25, 2014 (Dkt. No. 73), and as modified herein, meets the requisite requirements for fair, adequate, and reasonable settlement at this juncture of the settlement process. For the reasons stated above, the Court therefore GRANTS the motion for preliminary approval of the class action settlement, appointment of Shaun Setareh as Class Counsel and Plaintiff Patrick Bellinghausen as class representatives for settlement purposes, and the form and content of the revised proposed notice.

This matter will be heard for a final fairness hearing on **March 19, 2015 at 9 am.** Plaintiff's application for attorneys' fees, costs, and incentive awards will be reviewed at that time.

**IT IS SO ORDERED**.

Dated: November 26, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge