1  Shaun Setareh (SBN 204514)
       shaun@setarehlaw.com
2  Tuvia Korobkin (SBN 268066)
       tuvia@setarehlaw.com
3  Neil Larsen (SBN 276490)
       neil@setarehlaw.com
4  **SETAREH LAW GROUP**
5  9454 Wilshire Boulevard, Suite 907
   Beverly Hills, California 90212
6  Telephone:     (310) 888-7771
   Facsimile:     (310) 888-0109
7
8  Attorneys for Plaintiff,
   PATRICK BELLINGHAUSEN
9

10              **UNTITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12  PATRICK BELLINGHAUSEN, on behalf of          Case No. C 13-02377 JSC
    himself and all others similarly situated,
13                                               **NOTICE OF MOTION AND MOTION
14                                               FOR FINAL APPROVAL OF CLASS
                    *Plaintiff*,                 ACTION SETTLEMENT;
15                                               MEMORANDUM OF POINTS AND
                                                 AUTHORITIES IN SUPPORT THEREOF**
16       vs.
17
                                                 <u>**SUBMITTED UNDER SEPARATE
18  TRACTOR SUPPLY COMPANY, a Delaware           COVER:**</u>
    corporation; and DOES  1 -50, inclusive,
19                                                  1. **DECLARATION OF SHAUN
20                  *Defendants*.                       SETAREH;**
                                                    2. **DECLARATION OF ALEX
21                                                     SANTANA;**
                                                    3. **SUPPLEMENTAL DECLARATION
22                                                     OF STACY ROE; AND**
                                                    4. **[PROPOSED] ORDER**
23

24                                               Hearing Date:   March 19, 2015
25                                               Time:           9:00 a.m.
                                                 Courtroom:      F (15th Floor)
26                                               Judge:          Hon. Jacquelyn S. Corley
27
28

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that, on March 19, 2015 at 9:00 a.m., or as soon thereafter as may be

4 heard, in Courtroom F of the San Francisco Courthouse of the U.S. District Court for the Northern

5 District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102,

6 Plaintiff Patrick Bellinghausen ("Plaintiff") will and hereby does move this Court for an order:

7      1.      Confirming the conditional certification of the the Settlement Class, defined as "all non-

8 exempt employees employed by Tractor Supply Company in California between April 25, 2009 until

9 November 26, 2014 [date of preliminary approval], except any employee who has individually

10 adjudicated his or her claims during that same time period," for settlement purposes only;

11      2.      Finally approving the Stipulation for Class Action Settlement (the "Settlement")

12 previously submitted in connection with the Parties' Joint Motion for Preliminary Approval;

13      3.      Confirming the appointments of Plaintiff as the Class Representative for the Settlement

14 Class; and

15      4.      Confirming the appointment of Shaun Setareh, of Setareh Law Group, as Class Counsel

16 for the Settlement Class.

17

18      This Motion is made on the grounds that:

19      1.      The Settlement Class continues to meet all of the requirements for class certification for

20 purposes of settlement only pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

21      2.      The Settlement is fair, adequate, and reasonable as required under Rule 23(e) of the

22 Federal Rules of Civil Procedure;

23      3.      Plaintiff and his counsel are adequate to represent the Settlement Class as required by

24 Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

25      4.      The notice procedures and related forms have fully comported with all relevant due

26 process requirements and requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

27      5.      Based on the foregoing, final approval of the Settlement is warranted and the [Proposed]

28 Order submitted herewith should be adopted so as to give finality to the Settlement.

1       This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2   Authorities in support thereof, the Declarations of Shaun Setareh, Alex Santana, and Stacy Roe in

3   support thereof, all accompanying exhibits, all papers on currently on file with this Court, and such

4   further evidence and arguments as may be presented at hearing on the Motion.

5

6                                                     Respectfully submitted,

7                                                   SETAREH LAW GROUP

8

9   Dated:  February 19, 2015                  BY_____*/s/ Shaun Setareh*_____

10                                             SHAUN SETAREH

11                                             Attorneys for Plaintiff
                                           PATRICK BELLINGHAUSEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  OVERVIEW OF THE LITIGATION ......................................................................... 1

III.  SUMMARY OF THE SETTLEMENT ....................................................................... 3

IV.  SUMMARY OF THE NOTICE AND CLAIMS PROCESS ........................................ 4

V.  ARGUMENT ............................................................................................................ 5

    A.  Overview of Class Action Settlement Approval Process. ................................... 5

    B.  This Court Should Confirm Its Conditional Certification of the Settlement Class for Settlement Purposes Only Because It Continues to Meet the Requirements of Rules 23(a) and 23(b)(3). ........................................................................................... 6

    C.  This Court Should Finally Approve the Settlement Because It Is a Fair, Adequate, and Reasonable Compromise of Disputed Wage and Hour Claims. ....................... 6

        1.  The Settlement was negotiated at arms' length and reflects a fair, adequate, and reasonable compromise based on Defendant's estimated liability exposure compared against the risks of continued litigation. ................................ 7

        2.  The Settlement provides for a fair, adequate, and reasonable distribution of the Net Fund Value to participating Settlement Class members. ................ 9

        3.  The absence of objections, and extremely low number of requests for exclusion, confirm that the Settlement is a fair, adequate, and reasonable compromise of the disputed claims at issue and warrants final approval. ......................... 10

VI.  CONCLUSION ...................................................................................................... 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2 **CASES**

3  *7-Eleven Owners for Fair Franchising v. Southland Corp.*
4     85 Cal.App.4th 1135 (2000) ............................................................................ 10

5  *Acosta v. Trans Union LLC*
6     243 F.R.D. 377 (C.D. Cal. 2007) .................................................................... 5

7  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*
   616 F.2d 305 (6th Cir. 1980) ........................................................................ 5

8  *Baldwin & Flynn v. Nat'l Safety Assoc.*
9     149 F.R.D. 598 (N.D. Cal. 1993) .................................................................. 6

10  *Blackie v. Barrack*
11     524 F.2d 891 (9th Cir. 1975) ........................................................................ 6

12  *Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) .................................................................................... 6

13  *Hanlon v. Chrysler Corp.*
14     150 F.3d 1011 (9th Cir. 2003) ...................................................................... 5

15  *In re Cendant Corp., Derivative Action Litig.*
16     232 F.Supp.2d 327 (D. N.J. 2002) ................................................................ 9

17  *In re Immune Response Sec. Litig.*
   497 F.Supp.2d 1166 (S.D. Cal. 2007) ........................................................... 7

18
19  *In re Rite Aid Corp. Sec. Litig.*
   396 F.3d 294 (3d Cir. 2005) .......................................................................... 10

20  *Linney v. Cellular Ala. P'Ship*
21     1997 WL 450064 (N.D. Cal. 1997) .............................................................. 7

22  *Nordstrom Commission Cases*
23     186 Cal.App.4th 576 (2010) ......................................................................... 9

24  *Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982) ........................................................................ 6, 7

25  *Rodriguez v. West Publ'g Corp.*
26     2007 WL 2827379 (C.D. Cal. 2007) ........................................................... 9

27  *Staton v. Boeing Co.*
28     327 F.3d 938 (9th Cir. 2003) ........................................................................ 5, 6, 7

*Van Bronkhorst v. Safeco Corp.*
   529 F.2d 943 (9th Cir. 1976) ............................................................................................. 5

**STATUTES**

Cal. Civ. Proc. § 1500 ......................................................................................................... 4

Cal. Lab. Code § 203 ........................................................................................................... 8

Cal. Lab. Code § 226 ........................................................................................................... 8

Cal. Lab. Code § 2699. ........................................................................................................ 7

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 23 ....................................................................................................... 1, 5, 6, 7

**OTHER AUTHORITIES**

Manual for Complex Litigation § 1.46 (West 1977) ........................................................... 5

Schwarzer, Tashima & Wagstaffe
   Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (Rutter Group 2006) .................... 6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3    Plaintiff Patrick Bellinghausen ("Plaintiff" or "Class Representative") respectfully requests that

4 this Court finally approve the proposed class action settlement set forth in the Stipulation for Class

5 Action Settlement (the "Settlement")[1] with Defendant Tractor Supply Company ("TSC" or

6 "Defendant"). Under the Settlement, TSC has agreed to pay a non-reversionary gross settlement fund of

7 $1,000,000.00 (One Million Dollars) to compromise disputed claims for alleged wage and hour

8 violations. This Court granted preliminary approval of the Settlement on November 26, 2014.

9    As explained more fully below, the reaction from Settlement Class members to the Settlement

10 has been extremely positive. Of the 1,318 Settlement Class members who were provided notice, only

11 nine (9) have requested exclusion from the Settlement, and zero have objected. This overwhelmingly

12 positive response is reflective of the fairness, adequacy, and reasonableness of the Settlement.

13    The Settlement warrants this Court's final approval because: (1) the Settlement meets all the

14 requirements for class certification for settlement purposes only under Rules 23(a) and (b)(3) of the

15 Federal Rules of Civil Procedure; (2) Plaintiff and Class Counsel have adequately represented the

16 Settlement Class; (3) the Settlement bears all requisite indicia of fairness, reasonableness, and adequacy

17 as required by Rule 23(e)(2); (4) the notice procedure and related forms fully comported with all Rule

18 23 and due process requirements; and (5) in view of the foregoing, final approval of the Settlement is

19 warranted. Thus, this Court should grant Plaintiff's motion in its entirety and adopt the [Proposed]

20 Order submitted herewith.

21

**II.   OVERVIEW OF THE LITIGATION**

22    On April 25, 2013, Plaintiff filed a lawsuit against TSC in the Alameda County Superior Court,

23 Case No. RG 13-677135, alleging causes of action for (1) Failure to Provide Meal Periods; (2) Failure to

24 Provide Rest Periods; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely

25 Pay All Final Wages; and (5) Unfair Competition. Declaration of Shaun Setareh, submitted herewith

26 ("Setareh Decl."), ¶ 3.

27

28

---

[1] The Settlement was filed as Exhibit 1 to the Declaration of Shaun Setareh in Support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 69-2.)

On May 24, 2013, Defendant removed this case to the United States District Court for the Northern District of California, where it was assigned Case No. C-13-02377 JSC. (ECF No. 1.)

Plaintiff subsequently filed a First Amended Complaint which added causes of action for (i) failure to pay hourly wages and (ii) civil penalties. (ECF No. 10-11.) Plaintiff subsequently filed a Second Amended Complaint (ECF No. 33) and Third Amended Complaint (ECF No. 46) which added certain additional allegations, but no additional causes of action. On February 18, 2014, Defendant answered the Third Amended Complaint. (ECF No. 58.)

On April 2, 2014, Plaintiff and TSC participated in a full day mediation with Susan haldeman, a highly respected mediator with extensive experience in wage and hour class action matters, in Los Angeles, California. In connection with this litigation and the mediation, Plaintiffs and Defendant conducted substantial formal and informal discovery. Setareh Decl., ¶¶ 7-8. For Plaintiff, this included but was not limited to analyzing hundreds of pages of relevant documents and more than one million lines of payroll data; developing models for estimating Defendant's potential liability exposure in this action on a class-wide basis; and preparing a detailed mediation brief. *Id.* During the mediation session itself, the parties negotiated extensively at arm's length without reaching a resolution. *Id.* at ¶ 9. However, with Ms. Haldeman's assistance, the parties continued to engage in their arm's length negotiations following the mediation and ultimately agreed to the Settlement now before this Court as the result of a mediator's proposal. *Id.*

On October 15, 2014, the parties filed a joint motion for preliminary approval of the Settlement. (ECF No. 69.) On November 20, 2014, the parties' motion for preliminary approval came before this Court, and the Court directed the parties to submit a revised notice of settlement, a revised proposed order, and a stipulation re: same by November 25, 2014. (ECF No. 72.) On November 25, 2014, Plaintiff submitted these documents. (ECF No. 73.) On November 26, 2014, this Court granted preliminary approval of the Settlement. (ECF No. 74.) In accordance with the Settlement and the order granting preliminary approval of the Settlement, Plaintiff filed his motion for awards of attorneys' fees, costs, and class representative enhancement award on January 16, 2015. (ECF No. 77.) Now that the notice process has been completed in accordance with the preliminary approval order, Plaintiff submits this motion for final approval of the Settlement.

III.     **SUMMARY OF THE SETTLEMENT**

The Settlement provides for a <u>non-reversionary</u> Class Settlement Amount ("CSA") of $1,000,000. Settlement, ¶ 4.1. The Net Settlement Consideration ("NSC") is the portion of the CSA remaining after deductions for attorneys' fees (up to 25% of the GFV),[2] actual litigation costs, enhancement awards to Plaintiffs (up to $15,000 plus a $5,000 award in exchange for Plaintiff's general release of claims), claims administration expenses, payment of civil penalties to the California Labor and Workforce Development Agency ($35,000). [*Id.*, ¶¶ 4.2, 4.3, 9.1-9.4.]

As explained in greater detail in the parties' motion for preliminary approval, all class members who do not affirmatively opt-out will receive a payment from the Settlement. [*Id.*, ¶¶ 1.34, 4.1, 4.4.] Each class member who does not affirmatively opt out will receive a *pro rata* share of the NSC based on his or her Compensable Hours worked during the Class Period, less statutorily required tax withholdings.  The "Compensable Hours" of a Settlement Class member shall be the actual number of hours worked by the Settlement Class member as a non-exempt employee in California during the Class Period. The number of Compensable Hours of each Settlement Class member shall be determined from the payroll records maintained by TSC in the regular course of business. [*Id.*, ¶ 4.4.]

Settlement Class members who do not request exclusion shall release TSC, and each and all of its respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present owners, directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives (the "Released Parties"), from all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known or unknown, that each Class Member had, now has, or may hereafter claim to have against the Released Parties, arising at any time during the Class Period that were or could have been pleaded ***based on the facts and allegations alleged in the Third Amended Complaint filed in the Lawsuit or arising out of the same nucleus of operative facts.*** [*Id.*, ¶¶ 1.39, 10.2.]

///

---

[2] Although the Settlement provides for up to a 30% fee award, Plaintiff seeks only 25% in fees.

Because no objections to the Settlement have been filed, Defendant shall fund the CSA within ten (10) calendar days of the final approval order and the Settlement Administrator shall make all disbursements no later than ten (10) calendar days thereafter. [*Id.*, ¶ 8.2.] After disbursements are made, Settlement Class members shall have one hundred twenty (120) days to cash their settlement checks. [*Id.*, ¶ 4.7.] Subject to approval by this Court, all checks not cashed within that time will escheat to the State of California and be administered in accordance with the Unclaimed Property Law, Cal. Code Civ. Proc. § 1500 *et seq.* [*Id.*]

## IV.   SUMMARY OF THE NOTICE AND CLAIMS PROCESS

After this Court granted preliminary approval, on or about December 8, 2014, Defendant provided the Settlement Administrator with a mailing list identifying each putative class member, his or her social security number, his/her last known address, his/her last known email address (if any), and dates of employment (the "Class List"). [Declaration of Stacy Roe Re Settlement Administration (ECF No. 77-8) ("Roe Decl."), ¶ 9.] On December 17, 2014, the Settlement Administrator mailed Class Notices to all 1,318 Settlement Class members contained in the Class List. [*Id.*, ¶ 11.]

As of February 19, 2015, 99 Class Notices have been returned to the Settlement Administrator as undeliverable, 51 of whom had been provided Class Notices by email. [Supplemental Declaration of Stacy Roe Re Settlement Admnistration (filed herewith) ("Suppl. Roe Decl."), ¶ 2.] The Settlement Administrator performed "skip traces" for updated addresses for 96 of the undeliverable Class Notices, and received updated addresses for the remaining three (3) undeliverable Class Notices from the class members themselves or from counsel. [*Id.*] Of the 96 skip-traces, the Settlement Admnistator was able to identify more current addresses for 83 of the undeliverable Class Notices. [*Id.*] Of those 83, four (4) were returned as undeliverable a second time. [*Id.*]

As of February 19, 2015, only nine (9) Settlement Class members submitted requests for exclusion and no Settlement Class members submitted objections. [*Id.*, ¶¶ 5, 7.]

The average estimated payment to Settlement Class members is approximately $454.48 and the highest estimated payment is approximately $3,253.93. [*See* Roe Decl., ECF No. 77-8, ¶ 17.]

///

1    **V.      ARGUMENT**

2         **A.      Overview of Class Action Settlement Approval Process.**

3         The law favors settlement, particularly in class actions and other complex cases where

4   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See*

5   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply with

6   particular force in a case such as this where allegedly illegal practices affected hundreds of employees.

7   However, Rule 23(e)(C)(1) provides that a court may approve a settlement of a class action only when

8   it finds after a hearing that the settlement is "fair, reasonable, and adequate," and Rule 23(e)(C)(4

9   provides that any class member may object to a proposed settlement.

10        In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the

11  district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

12  2003). In other words, the court must determine that the lawsuit qualifies as a class action under Rule

13  23. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 2003) (reviewing settlement to ensure

14  compliance with requirements of Rules 23(a) and (b)(3)). Second, the court must determine whether the

15  settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. When the parties reach a

16  settlement agreement before a trial class is formally certified, "courts must peruse the proposed

17  compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v.*

18  *Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

19        Thus, judicial review of a class action settlement entails a two-step process. "The first step is a

20  preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range

21  of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether

22  there is any reason to notify the class members of the proposed settlement and to proceed with a

23  fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980)

24  (*quoting* Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). At the second stage, after class

25  members have had an opportunity to object to the settlement, the court makes a final determination

26  whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314.

27  ///

28

**B.** **This Court Should Confirm Its Conditional Certification of the Settlement Class for Settlement Purposes Only Because It Continues to Meet the Requirements of Rules 23(a) and 23(b)(3).**

Under the first step of the settlement approval analysis, this Court is obliged to make an initial determination that the Settlement Class meets the requirements of Rule 23. This requires that all four Rule 23(a) prerequisites and that at least one of the three Rule 23(b) requirements be met. Plaintiff need only make a "prima facie showing" of the requirements under Rule 23. *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (Rutter Group 2006). In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiff [has] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Accordingly, the Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiff[] to make a preliminary proof of [his] claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

Here, when this Court granted preliminary approval on November 26, 2014, it preliminarily found that the Settlement Class meets the requirements for class certification for settlement purposes. (ECF No. 74, p.19.) No subsequent events have cast doubt on this determination. (*See* Setareh Decl., ¶ 11.) Accordingly, this Court should confirm its conditional grant of class certification for settlement purposes only.

**C.** **This Court Should Finally Approve the Settlement Because It Is a Fair, Adequate, and Reasonable Compromise of Disputed Wage and Hour Claims.**

No single criterion is dispositive for whether a class settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton, supra*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

615, 625 (9th Cir. 1982). Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 625 (internal citations omitted).

Where a settlement results from arms' length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997). So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (approving a settlement where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, *supra*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Indeed, Rule 23(e) review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Thus, the Ninth Circuit will not reverse a district court's approval of a settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F.3d at 961.

**1.    The Settlement was negotiated at arms' length and reflects a fair, adequate, and reasonable compromise based on Defendant's estimated liability exposure compared against the risks of continued litigation.**

As explained in more detail in Plaintiff's Motion for Preliminary Approval, Plaintiff has estimated that Defendant's potential liability exposure for the wage and hour claims in this action theoretically might equal between $3,739,868 and $11,565,677, exclusive of attorneys' fees and costs. [Motion for Preliminary Approval (ECF No. 69), at pp. 26-29.] It is important to note that between $50,000 and $3,000,000 of the estimated potential liability exposure is comprised of PAGA penalties, of which only 25% would revert to class members if this case were ultimately successful at trial. (Lab. Code § 2699(i).) Thus, between $37,500 and $2,250,000 of the estimated potential liability exposure would not inure to class members. Moreover, PAGA penalties are discretionary. *See*, Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty

1  amount specified by this part…"). Thus, the Court could decide to award little to no PAGA penalties to
2  class members even if Plaintiff were successful at trial.

3       In the Court's Order granting preliminary approval, the Court asked that Plaintiff provide an
4  estimate of the value of his potentially recoverable attorneys' fees and costs. (ECF No. 74, pp.11-12.)
5  Pursuant to the evidence provided to the Court in connection with Plaintiff's motion for attorneys' fees
6  and costs, Plaintiff's counsel's estimated lodestar for all work performed is approximately $168,925
7  (without a "multiplier"), and Plaintiff has incurred a total of $21,747.28 in litigation costs.[3]

8       When these potential attorneys' fees and costs are included, Defendant's total potential liability
9  exposure increases to between $3,930,540 and $11,756,349. Thus, the $1,000,000 recovery in this case
10 is between approximately 25.4% and 8.5% of the total <u>potential</u> recovery, including total potential
11 attorneys' fees and costs and including total potential PAGA penalties (of which 75% would not be
12 recoverable by the class in any event). [Setareh Decl., ¶ 13.]

13      Notwithstanding the raw monetary amount of this exposure, there are significant risks that
14 continued litigation would entail that make the compromise amount fair, adequate, and reasonable. [*Id.*,
15 ¶ 14.] These risks include, but are not limited to: (i) the risk that the Court might conclude, outside the
16 context of a settlement class, that individual questions predominate over common questions as to
17 liability and/or damages issues; (ii) the risk that potential differences between the individual stores
18 where different class members worked and/or the differences in circumstances surrounding the end of
19 each employee's employment could cause class certification to be denied and/or narrow the scope of
20 any certified class; (iii) the risk that the Court could find for Defendant on one or several of its defenses
21 thus precluding any underlying recovery for Plaintiff or the class on one or more of Plaintiff's claims;
22 (iv) the risk that good faith disputes as to the viability of the underlying claims in this case could
23 preclude any penalty awards under California Labor Code §§ 203 and 226; and (v) the risk that
24 Defendant would appeal if Plaintiff prevails, further delaying payments to the class. [*Id.*]. While these
25 risks are far from exhaustive, their magnitude shows that the Settlement Agreement is a fair, adequate,
26 and reasonable compromise when taking them into account. [*Id.*]

27
28
_____
[3] *See* Setareh Declaration in Support of Motion for Fees and Costs, ECF No. 77-1, ¶¶ 13, 15-16.

Class Counsel is also of the opinion that the Settlement represents an excellent bargain for the class, given the inherent risks, hazards, and expenses of carrying the case through trial. As the Central District has explained, this weighs strongly in favor of approving the settlement. *See  Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. 2007) ( "The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."). Thus, in light of these considerable risks, Plaintiff has achieved a fair settlement that reflects a meaningful recovery on behalf of class members that merits this Court's final approval. *See In re Cendant Corp., Derivative Action Litig.*, 232 F.Supp.2d 327 (D. N.J. 2002) (approving settlement that only provided a 2% recovery based on the estimated liability exposure).

### 2. The Settlement provides for a fair, adequate, and reasonable distribution of the Net Settlement Consideration to Settlement Class members

The Settlement fairly, adequate, and reasonably compensates class members based on the potential extent of their claims. Under the Settlement, all class members will be entitled to a share of the Net Settlement Consideration based on their individual hours worked during the class period compared to the total hours worked for all class members. [Settlement, ¶ 4.4.] Because class members who worked more hours would have been subject to more of the alleged wage and hour violations than those who worked fewer hours in view of the theories of recovery advanced, this means of distribution compensates class members based on the potential extents of their injuries and is thus fair, adequate, and reasonable. [Setareh Decl., ¶ 15.]

Further, the actual payments provided for under this allocation method—which are currently estimated to average approximately $454.48[4]—provide for meaningful monetary relief for disputed wage and hour claims. *See Nordstrom Commission Cases*, 186 Cal.App.4th 576, 590 (2010) (affirming final approval of reversionary wage and hour class action settlement where 20% of the fund allocated to the class was merchandise vouchers).

///

---

[4] This number will increase because Plaintiff is seeking only 25% in attorneys' fees and only $21,747.28 in litigation costs, rather than the 30% and $30,000 contemplated in the Settlement, respectively. Thus, the Net Settlement Consideration to be distributed to class members is increased by $58,252.72. (*See* Motion for Fees and Costs, ECF No. 77, p.16.)

3.     **The absence of objections, and extremely low number of requests for exclusion, confirm that the Settlement is a fair, adequate, and reasonable compromise of the disputed claims at issue and warrants final approval.**

The absence of objections and extremely small number of requests for exclusion show that the Settlement is fair, adequate, and reasonable and support its final approval. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (explaining that low level of objections is a "rare phenomenon"); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1152–53 (2000) (finding 9 objections, and 80 opt-outs, from a class of 5,454, showed a positive response from class members supporting settlement approval); Here, after notice was mailed to all 1,318 class members, no class members submitted objections and only nine (9) (~0.7%) submitted requests for exclusion. [Suppl. Roe Decl., ¶¶ 5, 7.] As such, the absence of objections and extremely small number of requests for exclusion shows that the Settlement warrants this Court's final approval.

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests for this Court to grant this Motion in its entirety and adopt the [Proposed] Order concurrently submitted herewith.

Respectfully submitted,

SETAREH LAW GROUP

Dated: February 19, 2015                BY___*/s/ Shaun Setareh*_____
                                             SHAUN SETAREH
                                             Attorneys for Plaintiff
                                             PATRICK BELLINGHAUSEN