Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Tuvia Korobkin (SBN 268066)
    tuvia@setarehlaw.com
Neil Larsen (SBN 276490)
    neil@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone:    (310) 888-7771
Facsimile:     (310) 888-0109

Attorneys for Plaintiff,
PATRICK BELLINGHAUSEN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BELINGHAUSEN, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>TRACTOR SUPPLY COMPANY, a Delaware corporation; and DOES 1-50, inclusive,<br><br>*Defendants*. | Case No. C 13-02377 JSC<br><br>**DECLARATION OF SHAUN SETAREH IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:  March 19, 2015<br>Time:  9:00 a.m.<br>Courtroom:  F (15th Floor)<br>Judge:  Hon. Jacquelyn S. Corley |

# **DECLARATION OF SHAUN SETAREH**

I, Shaun Setareh, declare as follows:

1. I am an attorney in good standing duly admitted to practice before the U.S. District Court for the Northern District of California and am an attorney of record for Plaintiff Patrick Bellinghausen in this action against Tractor Supply Company.

2. Except for those matters stated on information and belief, which I am informed and believe are true and correct, I have personal knowledge of all matters set forth herein. If called as a witness, I could and would competently testify thereto under oath.

3. On April 25, 2013, Plaintiff filed a lawsuit against TSC in the Alameda County Superior Court, Case No. RG 13-677135, alleging causes of action for (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; and (5) Unfair Competition.

4. On May 24, 2013, Defendant removed this case to the United States District Court for the Northern District of California, where it was assigned Case No. C-13-02377 JSC. (ECF No. 1.)

5. Plaintiff subsequently filed a First Amended Complaint which added causes of action for (i) failure to pay hourly wages and (ii) civil penalties. (ECF No. 10-11.) Plaintiff subsequently filed a Second Amended Complaint (ECF No. 33) and Third Amended Complaint (ECF No. 46) which added certain additional allegations, but no additional causes of action.

6. On February 18, 2014, Defendant answered the Third Amended Complaint, denying Plaintiff's allegations and raising several affirmative defenses. (ECF No. 58.)

7. The Parties engaged in both formal and informal discovery in this action, and exchanged information and documents about the claims alleged and Defendant's defenses thereto. After conducting both formal and informal discovery, the parties determined that private mediation may be beneficial for both parties to resolve the issues alleged in the complaint. In anticipation of mediation, Defendant produced hundreds of pages of

documents. These documents included, among other things, policies relating to meal and rest periods, payroll, time keeping, vacation pay, and Plaintiff's personnel file. Defendant also produced more than one million lines of payroll data.

8. On April 2, 2014, Plaintiff and TSC participated in a full day mediation with Susan Haldeman, Esq., a highly respected mediator with extensive experience in wage and hour class action matters, in Los Angeles. Both parties prepared detailed mediation briefs, and through the use of experts the parties developed models for estimating Defendant's potential liability exposure in this action on a class-wide basis.

9. During the mediation session, the parties negotiated extensively at arm's length without reaching a resolution. But with the mediator's assistance, which included a mediator's proposal, the parties continued engaging in their arm's length negotiations during the weeks following the mediation session and ultimately agreed to the Agreement now before this Court.

10. At all times, the Parties' negotiations were adversarial, non-collusive, and at arm's length.

11. On November 26, 2014, this Court granted preliminary approval to the Settlement, and it preliminarily found that the Settlement Class meets the requirements for class certification for settlement purposes. (ECF No. 74, p.19.) No subsequent events have cast doubt on this determination.

12. In the Court's Order granting preliminary approval, the Court asked that Plaintiff provide an estimate of the value of his potentially recoverable attorneys' fees and costs. Pursuant to the evidence provided to the Court in connection with Plaintiff's motion for attorneys' fees and costs, Plaintiff's counsel's estimated lodestar for all work performed is approximately $168,925, and Plaintiff has incurred a total of $21,747.28 in litigation costs.[1]

---

[1] *See* Declaration of Shaun Setareh in Support of Motion for Fees and Costs, ECF No. 77-1, ¶¶ 13, 15-16.

13. As discussed in detail in connection with Plaintiff's Motion for Preliminary Approval, Defendant's potential liability exposure—excluding attorneys' fees and costs—is estimated at between $3,739,868 and $11,565,677.[2] When the aforementioned potential attorneys' fees and costs are included, Defendant's total potential liability exposure increases to between $3,930,540 and $11,756,349. Thus, the $1,000,000 recovery in this case is between approximately 25.4% and 8.5% of the total <u>potential</u> recovery, including total potential attorneys' fees and costs and including total potential PAGA penalties (of which 75% would not be recovered by the class in any event, pursuant to Lab. Code § 2699(i)).

14. Notwithstanding the raw monetary amount of this exposure, there are significant risks that continued litigation would entail that make the compromise amount fair, adequate, and reasonable. These risks include, but are not limited to: (i) the risk that the Court might conclude, outside the context of a settlement class, that individual questions predominate over common questions as to liability and/or damages issues; (ii) the risk that potential differences between the individual stores where different class members worked and/or the differences in circumstances surrounding the end of each employee's employment could cause class certification to be denied and/or narrow the scope of any certified class; (iii) the risk that the Court could find for Defendant on one or several of its defenses thus precluding any underlying recovery for Plaintiff or the class on one or more of Plaintiff's claims; (iv) the risk that good faith disputes as to the viability of the underlying claims in this case could preclude any penalty awards under California Labor Code §§ 203 and 226; and (v) the risk that Defendant would appeal if Plaintiff prevails, further delaying payments to the class. While these risks are far from exhaustive, their magnitude shows that the Settlement Agreement is a fair, adequate, and reasonable compromise when taking them into account.

---

[2] *See* Declaration of Shaun Setareh in Support of Motion for Preliminary Approval, ECF No. 69-1, at ¶¶ 24-25.

15. The Settlement fairly, adequate, and reasonably compensates class members based on the potential extent of their claims. Under the Settlement, all class members will be entitled to a share of the Net Settlement Consideration based on their individual hours worked during the class period compared to the total hours worked for all class members. [Settlement, ¶ 4.4.] Because class members who worked more hours would have been subject to more of the alleged wage and hour violations than those who worked fewer hours in view of the theories of recovery advanced, this means of distribution compensates class members based on the potential extents of their injuries and is thus fair, adequate, and reasonable.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on February 19, 2015 at Beverly Hills, California.

By: */S/ Shaun Setareh*
 Shaun Setareh
 Declarant